# Glover v. Gentry.

### Action on a Promissory Note.

1. *Witness; competency of wife as to transaction between husband and decedent.*—Under the provisions of the statute approved February 10, 1891, (Acts, 1890-91, p. 556), which excludes as a witness as to transactions with a decedent, any one having a pecuniary interest in the result of the suit, and provides that no incompetent witness shall make himself competent by transfer of his interest, where an action is brought against the administrator of a decedent's estate on a note alleged to have been executed by the defendant's intestate, the plaintiff's wife is not a competent witness to the transaction between the plaintiff and the decedent, which led up to the execution of the note, where it is shown that she had a pecuniary interest pending the suit, under a contract with her husband, and rescinded such contract, for the purpose of making her a competent witness.

[Glover v. Gentry.]

2. *Evidence; when error without injury to exclude competent evidence.* Where evidence offered by the plaintiff is competent and admissible, but is excluded, the error in its exclusion is without injury, when it is shown that if such evidence had been admitted, it would not entitle the plaintiff to recover.

APPEAL from the Circuit Court of Jackson.

Tried before the Hon. JAMES A. BILBRO.

This action was brought by the appellant Samuel H. Glover, against the appellees, J. L. Gentry and C. B, Moore, as administrators of the estate of William Moore, deceased, and counted upon a promissory note for $1,250 alleged to have been executed by William Moore, the defendant's intestate, bearing date July 9, 1888. The complaint also contained a count upon an open account, and another one for money loaned by plaintiff to the defendant. The defendant pleaded in short, by consent, *non assumpsit*; payment; set off; statute of limitations, and *non est factum*; and issue was joined upon these pleas.

The plaintiff, after identifying the note sued on and proving the signature thereto of the defendants' intestate offered to introduce the same in evidence. The defendants objected to the introduction of said note, on the ground that the note bore evidence on its face of having been changed after it was signed, from a note for $50, to a note for $1,250. The court sustained the objection, and the plaintiff duly excepted. The plaintiff, as a witness, was shown the note sued on, and asked: "In whose hand-writing is that note?" To which he replied: "It is in my hand-writing, except the signature." The defendants objected to this question and answer on the ground that witness was incompetent. The court sustained the objection, and to this ruling of the court the plaintiff objected and excepted.

Aletha Glover, wife of plaintiff, was then called and introduced as a witness for plaintiff. Witness was then asked by plaintiff's counsel, after being shown the note in suit: "Were you present when that note was executed? Did you witness the sum of money paid at the time that note was executed?" Defendant's counsel objected to both these questions, and moved to exclude the answers on the grounds "that William Moore's estate was interested in this suit; that he is dead, and that the witness was interested in the result of this suit, and a

party on the record, or had been.'' To sustain said ob-
jection they examined said witness on her *voir dire*.
She testified : ''I am the wife of the plaintiff in this suit.
After this suit began my husband, the plaintiff, trans-
ferred this note to me on condition that if I got the
money I was expecting to get from my brother, Sam
Willis Norwood, he was to have this money ; I was to
have this note. My father, who is now living, deeded
all his land to my brother, Sam Willis Norwood, in con-
sideration of $————, and as much of the purchase
money as was necessary was to be paid to S. C. Nor-
wood's creditors. My brother was to pay all the debts
of my father, and whatever was left was to be divided
equally between my father's four children. My brother
had had this matter in hand a number of years, and my
sisters and I were insisting on our brother paying us our
part, which we claimed was about $2,000 each. It was
this money that my husband and myself were negotia-
ting about. If my husband was unable to get the
money, then he was to let me have the Moore note, if
my brother would give him his note for that amount.
This was conditionally arranged between myself and my
husband in order that he might deal with my brother,
and not me to have him to deal with. My husband
never delivered to me the Moore note, or any written
evidence of the transaction. The note at that time was
in the hands of his attorney at Scottsboro, and has re-
mained with him ever since. My husband, without my
knowledge, and without consulting me, wrote out a no-
tice (as I have since learned), which I see here in the
court, notifying Mr. Gentry and Mr. Moore that the
note in suit belonged to me. The condition on which
the Moore note was to become mine never happened.
My brother did not pay my husband the money, nor did
he execute him the note, and that trade fell through.
The trade was abandoned and my brother since paid my
claim (recently) in land. During the time I was on the
witness stand at the last term of the court—either while
I was on the stand, or between that time and the next
morning, when I was re-introduced—Mr. Brown, the
attorney for my husband, prepared some sort of a paper
formally recanting the trade between me and my hus-
band, which I signed. The paper was then offered in

evidence and objected to and excluded. I have not seen the paper since."

Mr. Brown then stated from his place as an attorney that he had prepared such a paper, and that instead of reciting that the note had been transferred or sold by the husband to his wife, the paper recited that the trade was a conditional one, by which the note was to be hers, and the condition had not happened, and for that reason the proposed trade was recanted, and the proposed transfer declared void. That when the court passed on the admissibility of the paper and excluded it, without reflection he tore it up and threw it down, and therefore neither he nor his client could produce it in obedience to the demand of the defendants' counsel.

The plaintiff, S. H. Glover, was then introduced and examined touching the transfer of the note by him to his wife. He testified substantially as his wife did, and detailed the conditional trade just as his wife did, except he said he had not consulted his attorney about this conditional trade, and that his attorney knew nothing of it. After he and his wife had their negotiations, he saw both Gentry and Moore, the two administrators, and notified them, both verbally and in writing, that he had transferred the Moore note to his wife. He said nothing to them about any conditions in the transfer. He also saw the circuit court clerk, J. M. Thompson, in his office at Scottsboro, and notified him he had transferred the note to his wife, and asked him to change the style of the case on the record, and make it to the use of his wife. After he had so notified the administrators and the clerk of the transfer, he saw S. W. Norwood and told him of the arrangement between him and his wife; that his wife was to have the Moore note, if he (Norwood) would pay him $2,000, or give him his note for that amount. Norwood said he would not do either one, and claimed he did not owe plaintiff's wife anything, and that there was nothing coming to her from him. Plaintiff then told his wife of this interview with her brother, and they then agreed that the conditional trade was ended and abandoned.

Gentry and Moore were then introduced, as witnesses and testified about being notified by plaintiff in Bridgeport, both verbally and in writing, about having transferred the Moore note to his wife, and that he said nothing

of any condition about the transfer, but spoke of it as his wife's note; and that he would have the suit changed in his wife's name.

J. M. Thompson, clerk, then testified that plaintiff came into the clerk's office and notified him that he had transferred the Moore note to his wife, and gave him written notice to transfer and change the style of the case so as to make it in the name of his wife, or to her use. The writing has been lost, or can not be found. It was with the papers, but has been mislaid or lost.

This was all the evidence touching the competency of Mrs. Aletha Glover. The defendants' counsel then renewed their objection to her testimony touching the transactions with, or statements by, deceased concerning said note. The court sustained the objection, and plaintiff duly excepted.

Plaintiff then renewed his question to Mrs. Glover: "Did you witness the sum of money paid at the time the note was executed?" (Showing her the note in suit.) Defendants objected, and the court sustained the objection. The plaintiff then and there excepted to the ruling of the court.

It is unnecessary to set out the facts pertaining to the other rulings of the court, as they were substantially the same as disclosed on the former appeal, and reported in the case of *Glover v. Gentry*, 104 Ala. 222.

There were verdict and judgment for the defendants. The plaintiff appeals and assigns as error the several rulings of the trial court to which exceptions were reserved.

JAMES E. BROWN, for appellant.—Upon the plaintiff proving that the signature to the note sued on was that of the defendant's intestate, the note was admissible in evidence, without further proof.—*Manning v. Norwood*, 1 Ala. 429; Brandon on Evidence, p. 84.

MARTIN, BOULDIN & ASHLEY, *contra*.—There was no error in the court's refusal to allow the note sued on to be introduced in evidence upon proof of its execution.—*Glover v. Gentry*, 104 Ala. 224, 110 Ala. 691; *Hill v. Nelms*, 86 Ala. 442; *Barclift v. Treece*, 77 Ala. 528; *Montgomery v. Crossthwait*, 90 Ala. 553; 1 Amer. & Eng. Encyc. of Law, 512, n. 4.

[Glover v. Gentry.]

The wife of the plaintiff was not a competent witness. *Howle v. Edwards*, 97 Ala. 649 ; *Hodges v. Denny*, 86 Ala. 226 ; *Glover v. Gentry*, 104 Ala. 224, 110 Ala. 691 ; *Hagan v. Easter*, 111 Ala. 480 ; *Boykin v. Smith*, 65 Ala. 294 ; *Miller v. Cannon*, 84 Ala. 59.

HEAD, J.—The testimony of Mrs. Glover and her husband, the plaintiff, touching her competency to testify to transactions had between her husband and the deceased, Moore, is different from that contained in the record when the case was before us on a former appeal, but we think it still establishes her incompetency. The statute (Acts, 1890-91, p. 557) excludes any one having a pecuniary interest in the result of the suit. The language is broad enough to include any pecuniary interest, absolute or contingent ; and it further provides that no person who is an incompetent witness under the act shall make himself competent by transferring his interest to another. That the witness had, pending the suit, a contingent pecuniary interest in the note sued on, cannot be disputed. It is so plain, from the evidence, that a child may comprehend, that the efforts of the husband and wife to undo that which they had done, by which the wife acquired her interest, was for the express purpose of making her a competent witness in this case. The statute forbids all such enterprises. Moreover, the proof now shows that Mrs. Glover's brother paid her claim against him—the very contingency upon which her ownership of the note was to become absolute. That it was paid in land is of no consequence. If they saw proper to accept land instead of money, they could do so. But for the evidence of a re-transfer by Mrs. Glover to her husband, of her interest in the note, he could not, under the evidence, maintain this action as the party really interested. The re-transfer, however, as we have said, did not help her competency as a witness.

Plaintiff's only purpose in the offer to prove by his own testimony that the body of the note was written by him, was to tend to establish the disputed fact that the note was executed by the deceased, Moore, as written. The testimony proposed was of no conceivable value unless followed by evidence that plaintiff wrote it as deceased executed it. That fact plaintiff could not have testified to. In view of the issue as to the alleged fraud,

ulent alteration of the note, it might have been bene-
ficial to the defendants to prove that it was written by
the plaintiff, but we are unable to see how such proof
could help the plaintiff.

The other questions were passed upon adversely to
the plaintiff on the former appeal.

Affirmed.